UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESSILOR LABORATORIES OF AMERICA, INC.,

        Plaintiff,

  v.                                        Case No. 08-C-296

ST. PAUL FIRE AND MARINE INSURANCE
COMPANY N/K/A THE TRAVELERS
COMPANIES, INC.,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

Plaintiff Essilor Laboratories of America, Inc., ("Essilor") filed this action in state court seeking a determination that St. Paul Fire and Marine Insurance Company ("St. Paul") is obligated to provide a defense and indemnify Essilor for silicosis-related claims under various insurance policies St. Paul allegedly issued to Essilor's predecessor, W.O.S., Inc.,[1] during the period between the mid-1970's and March 1, 1985. Essilor also claims that St. Paul acted in bad faith in refusing the tender of defense made to it in an earlier action that has since been settled. The case was initially filed in the Circuit Court for Winnebago County, but removed to this Court based on federal diversity jurisdiction. 28 U.S.C. § 1332. Before the Court is St. Paul's motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant

---

[1] Before it was known as W.O.S., Inc., the company's name was Wisconsin Optical Services, Inc.

to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The parties have briefed and argued the matter before the Court. For the reasons stated below, St. Paul's motion is granted and this matter is dismissed.

**BACKGROUND**

Essilor's predecessor W.O.S., Inc. was named, along with others, as a defendant in a negligence and strict product liability suit (hereinafter, "the *Allen* action") commenced in Winnebago County Circuit Court on October 18, 2005. (Am. Compl. ¶ 6.) The eleven plaintiffs and the estate of the twelfth deceased plaintiff, all former or present foundry workers, alleged they suffered occupational lung diseases caused by exposure to silica sand and silica-containing products and/or other pneumoconiosis producing dusts while wearing dust respirators manufactured and sold by defendants such as W.O.S., Inc. (*Id.* at ¶ 7.) Given the fact these claims had the potential to reach back decades in time, Essilor began researching what insurance policies its predecessor may have held from April 16, 1968 to September 1, 1996. (Id. at ¶ 9.) Essilor concluded that St. Paul had issued comprehensive general liability policies to W.O.S., Inc. from the mid 1970's through March 1, 1985.[2] (*Id.* at ¶ 10.)

Essilor tendered defense of the *Allen* action to St. Paul on May 3, 2006. (*Id.*) Essilor alleges that St. Paul took the position that its search for policies did not turn up anything that required it to defend, so it declined to undertake the defense. (*Id.* at ¶ 13.) Three other insurers of W.O.S., Inc. identified by Essilor accepted Essilor's tender, however, and ultimately settled the case at no cost

---

[2]Essilor avers it later determined that St. Farm also issued umbrella excess liability policies covering the period between February 1, 1980 and March 1, 1985. (Am. Compl. ¶ 11.)

to Essilor. Prior to the settlement, the other insurers insisted that Essilor pay its pro rata share, or 63.6%, of the costs of defense and settlement based on the period of time their policies were not in effect. Relying on *Plastics Engineering Co. v. Liberty Mut. Ins. Co.*, 466 F. Supp. 2d 1071 (E.D. Wis. 2006), which held that under Wisconsin law, liability policies obligated an insurer of insured manufacturer of asbestos to pay "all sums" the insured was obligated to pay for claim based upon exposure to asbestos, Essilor refused to contribute to the settlement. The other insurers apparently abandoned their effort to have Essilor contribute, and the *Allen* action was settled without any contribution from Essilor and dismissed on August 18, 2008. (*Id.* at ¶ 12.)

Essilor is concerned that the holding in *Plastics Engineering* will not stand. The insurer in that case appealed, and the Seventh Circuit certified the question of whether Wisconsin insurers were obligated to pay all sums or a pro rata share to the Wisconsin Supreme Court. 514 F.3d 651 (7th Cir. 2008). The Wisconsin Supreme Court has yet to decide the question. Essilor's fear is that if the Wisconsin Supreme Court adopts the pro rata approach, the three insurers who did defend in the *Allen* action will seek partial indemnification for what they paid in defense and settlement costs. (Doc. # 25 at 4.) Essilor is also concerned that it will face additional silicosis claims in the future and, unless the issue is resolved, St. Paul will take the same position.

At oral argument, counsel for Essilor expressed a concern that evidence of policies issued by St. Paul to cover W.O.S., Inc. would vanish in the future, through inadvertent spoilation of electronically-stored information, document disposal schedules and the death of witnesses. Essilor posits that although it is not certain that it will be faced with future claims of contribution or indemnity, it will be much more difficult to prove coverage later in time and therefore requests declaratory relief establishing coverage.

3

**ANALYSIS**

**I. Standards**

In reviewing the plaintiff's complaint with regard to any motion to dismiss, all well-pleaded facts are assumed to be true, and all such facts, as well as the reasonable inferences therefrom, are viewed in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of this Court over the subject matter related in the complaint. A motion to dismiss under Rule 12(b)(6), on the other hand, challenges the sufficiency of the complaint to state a claim upon which relief can be granted. In this connection, a complaint has "two easy-to-clear hurdles" to state a claim in federal court:

> First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court.

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

**II. Standing for Declaratory Relief**

St. Paul moves for dismissal of Essilor's claim for declaratory judgment on the ground that the Court lacks subject-matter jurisdiction, as it contends Essilor lacks standing. St. Paul avers that Essilor has not suffered injury in fact, but merely hypothetical injury contingent on future events. Essilor argues that an injury can be contingent and yet an injury in fact sufficient to establish standing. Essilor hangs its hat on what it calls a "credible threat" that, in the event the Wisconsin Supreme Court adopts the pro rata approach advocated by the insurers in the *Allen* action, they

4

could seek indemnification from Essilor for its pro rata share of the amount paid in defense and settlement of the claim. Essilor also fears it will be held liable for costs in other future silicosis cases, a part of which it believes St. Paul's policies would cover. (Doc. # 25 at 10.)

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl.1. The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing to sue in federal court "the plaintiff must allege (1) that he has suffered an injury in fact (2) that is fairly traceable to the action of the defendant and (3) that will likely be redressed with a favorable decision." *Books v. City of Elkhart*, 235 F.3d 292, 299 (7th Cir. 2000) (citing *Lujan*, 504 U.S. at 560-61).

At oral argument, Essilor directed the Court's attention to *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 2008 WL 5188854 (10th Cir. 2008), a case in which the Tenth Circuit held that a contingent liability may present an injury in fact for standing purposes. The court reasoned that even though a contingent liability may or not arise for a considerable time, if ever, "[t]he consequences of a contingent liability . . . may well be actual or imminent." 2008 WL 5188854, *5. In *Protocol*s, the plaintiffs alleged that a change in the policies of the Department of Health and Human Services and the Centers for Medicare and Medicaid Services created the possibility that the government would seek reimbursement from plaintiffs based upon plaintiffs' involvement in settling workers' compensation claims. Plaintiffs argued that this contingent liability hung like a dark cloud over their heads and hampered their ability to conduct business in several ways. First, they contended that the value of a company is decreased when there are known liabilities, even if contingent. They also argued that the uncertainty of the liability made it difficult to plan how to

5

structure corporate budgets. Finally, the plaintiffs averred that they were forced to postpone discussions with potential investors as they awaited the outcome of the litigation. *Id*. The Tenth Circuit agreed and found that the plaintiffs' contingent liability "has created an actual and imminent injury." *Id*. at *7.

The Seventh Circuit has also addressed the question of whether contingent liability can constitute the injury in fact necessary to establish Article III standing. In *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490 (7th Cir. 2005), the court held that "the present impact of a future though uncertain harm may establish injury in fact for standing purposes." 422 F.3d at 498. The Seventh Circuit found harm to the Indian tribe plaintiffs where the tribes faced an increase in the cost of capital as a result of an amendment to a gaming compact between the state and a third Indian tribe, as the amendment might have made the state less likely to approve plaintiff tribes' application for off-reservation gaming. 422 F.3d at 499. The court discussed the Supreme Court's decision in *Clinton v. City of N.Y.*, 524 U.S. 417, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998). *Id.* at 498-99. In *Clinton*, the Supreme Court held that "[t]he revival of a substantial contingent liability immediately and directly affects the borrowing power, financial strength, and fiscal planning of the potential obligor." 524 U.S. at 431.

The Seventh Circuit also found plaintiffs alleged injury sufficient to establish standing in a case where an electric utility holding company claimed that the market value of a subsidiary's stock was diminished as a result of a Wisconsin regulation requiring prior administrative approval of any sale to a single person by an electric utility holding company of 10% or more of its stock in a Wisconsin utility. *Alliant Energy Corp. v. Bie*, 277 F.3d 916 (7th Cir. 2002). The court reasoned that even if the plaintiffs could not identify any potential buyers of the stock, the 10% limit deprived

6

plaintiffs of the option to sell 10% of the stock. As such an option has a positive value even if there are no willing buyers today, the plaintiffs could establish concrete injury. *Id*. at 921.

Unlike the plaintiffs in *Protocols*, Essilor has not alleged that its current ability to conduct its business is hampered because of the purported contingent liability. Essilor merely claims that absent declaratory relief and a favorable decision by the Wisconsin Supreme Court on the allocation issue, it could face liability from the three insurers for a pro rata share of the defense and indemnity costs in the *Allen* action and liability for a share of damages in future silicosis suits. (Doc. # 25 at 8.) These fears are too remote and uncertain to afford Article III standing.

As noted above, counsel for Essilor expressed a concern that if this action were dismissed, Essilor could find it difficult to discover information regarding insurance policies it believes St. Paul issued to its predecessor in years past. Though stayed pending the Court's decision on this motion to dismiss, discovery had begun in this case and Essilor's position is that it should be allowed to continue to reconstruct the policies it believes St. Paul issued. Essilor's desire to preserve whatever evidence may exist of policies issued in the past is understandable given the decades that can elapse before toxic tort claims are brought. But it is not a substitute for Article III standing. Speculative claims cannot be used as a vehicle to reconstruct insurance policies.

Even assuming that Essilor's allegations are true, as I must at this stage of the proceeding, there is no injury in fact. Essilor has failed to allege how it is presently impacted based upon a contingent liability. Because I find that Essilor has not demonstrated that it has standing to bring its claim for declaratory relief, its claim is dismissed under Rule 12(b)(1) for a lack of subject-matter jurisdiction.

7

**III. Bad Faith Claim**

St. Paul seeks dismissal of the bad faith claim on the ground Essilor fails to state a claim upon which relief may be granted. The fatal defect in Essilor's claim, as St. Paul sees it, is that Essilor suffered no damages as a result of St. Paul's rejection of its tender of defense in the *Allen* action. The three insurers who accepted Essilor's tender paid for its defense and settled the case without any contribution from Essilor. Despite this fact, Essilor contends that its claims for attorneys fees and punitive damages in this action is sufficient to support its claim for bad faith.

Wisconsin recognizes an intentional tort of bad faith, "which results from a breach of duty imposed as a consequence of the relationship established by contract." *Anderson v. Cont'l Ins. Co.*, 85 Wis.2d 675, 687, 271 N.W.2d 368, 374 (1978). "If an insured successfully proves that the insurer intentionally denied a claim without a reasonable basis, the insured is entitled to recover all damages which are the proximate result of the insurer's bad faith." *Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 37, 249 Wis.2d 623, ¶ 37, 638 N.W.2d 575, ¶ 37 (Wis. 2002). Once an insured proves bad faith, the insured's attorney fees in bringing the action can be recoverable as actual damages. *DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 577, 547 N.W.2d 592, 599 (Wis. 1996). But it does not follow that an insured who sustains no loss as a result of his insurer's denial of coverage can in essence create a loss consisting of attorneys fees incurred in starting a separate action. To hold otherwise would mean that an insured can bring an action against its insurer when the only relief sought consists of the attorneys fees the insured incurs in bringing the action. Stated another way, a plaintiff cannot create the sole loss his lawsuit is intended to redress.

As Essilor has not properly alleged actual damages, its claim for punitive damages must fail as well. "[P]unitive damages are not available where there has been no 'award' of actual damages."

8

*Tucker v. Marcus*, 142 Wis. 2d 425, 439, 418 N.W.2d 818, 823 (Wis. 1988); *see also Kehl v. Econ. Fire & Cas. Co.*, 147 Wis. 2d 531, 534, 433 N.W.2d 280 (Wis. Ct. App. 1988) ("Punitive damages may not, however, be awarded *in vacuo*. Juries are not given license to roam the caverns of their consciences to punish conduct they deem despicable unless a plaintiff can prove that he or she has suffered some actual damage as a result of the conduct."). Without any plausible claim of loss, Essilor's claim for bad faith must be dismissed.

**THEREFORE, IT IS ORDERED** that Essilor's claim for declaratory relief is dismissed pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that Essilor's bad faith claim is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

The clerk is directed to enter judgment accordingly.

Dated this   20th   day of January, 2009.

                                       s/ William C. Griesbach
                                       William C. Griesbach
                                       United States District Judge